## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| SAMUEL KERSON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  5:20-cv-00202-gwc |
| | ) | |
| VERMONT LAW SCHOOL, INC., | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## VERMONT LAW SCHOOL, INC.'S MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Vermont Law School, Inc. ("VLS"), by and through counsel, moves to dismiss the Complaint with prejudice.

## Introduction

This lawsuit raises a simple question: Does federal law compel a private educational institution to continue to display a work of art, notwithstanding the fact that members of the school community find the work offensive and hurtful?  The answer is plainly no.  While the Visual Artists Rights Act ("VARA" or the "Act") protects the rights of visual artists from incursions upon the integrity and proper attribution of their works, the Act does not bestow upon artists the affirmative right to insist on the ongoing display of their works.  VARA is a shield—not a sword.

At issue is Plaintiff Samuel Kerson's 1994 mural, painted on a wall in Vermont Law School's Chase Hall and conceived to celebrate the history of African Americans and abolitionists involved in the Underground Railroad.  Despite its beneficent intentions, the mural has not aged well.  Its depiction of African Americans strikes some viewers as caricatured and offensive, and the mural has

1

become a source of discord and distraction at Vermont Law School—an institution whose explicit mission it is to educate students in a diverse community. Responding to concerns, Vermont Law School has resolved to remove the mural from display by concealing the work behind acoustic panels. Samuel Kerson now sues under VARA to prevent Vermont Law School from doing so.

VARA, however, affords Kerson no basis to compel VLS to continue to display his work in the face of community opposition and disruption to the school's learning environment. As his claim lacks any legal merit, VLS respectfully requests that the Court grant its motion and dismiss this suit with prejudice.

## Background

### A.    The Visual Artists Rights Act.

Enacted by Congress in 1990, VARA functions to protect two aspects of the "moral rights"[1] of visual artists in works they create: the rights of attribution and of integrity. *See* 17 U.S.C. § 106A(a). The right of attribution "generally consists of the right of an artist to be recognized by name as the author of his work or to publish anonymously or pseudonymously, the right to prevent the author's work from being attributed to someone else, and to prevent the use of the author's name on works created by others, including distorted editions of the author's original work." *Carter v. Helmsley-Spear, Inc.,* 71 F.3d 77, 81 (2d Cir. 1995). The right of integrity—which is what is at issue in the present case—"allows the author to

---

[1] The concept of moral rights, which originated in civil law, "is meant to capture those rights of a spiritual, non-economic and personal nature," arising "from a belief that an artist in the process of creation injects his spirit into the work and that the artist's personality, as well as the integrity of the work, should therefore be protected and preserved." *Carter v. Helmsley-Spear, Inc.,* 71 F.3d 77, 81 (2d Cir. 1995).

prevent any deforming or mutilating changes to his work, even after title in the work has been transferred." *Id.*

The relevant portion of VARA provides that the author of a work of visual art—defined to include a painting, drawing, print, sculpture, or still photographic image, *see* 17 U.S.C. § 101—shall have the right, subject to certain exceptions:

> (A) to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right, and

> (B) to prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right.

*Id.* § 106A(a)(3). Stated simply, VARA creates two categories of protection for the integrity of works of visual art: all works are protected against intentional distortion, mutilation, or modification prejudicial to the artist's reputation or honor, but only works of "recognized stature" are protected against destruction. These rights are personal to the author of the work, and terminate upon the death of the author. *Id.* § 106A(b), (d).

VARA lays out two exceptions pertinent to the present dispute. First, the Act generally bars claims arising from the public presentation of a work, stating: the "modification of a work of visual art which is the result . . . of the public presentation, including lighting and placement, of the work is not a destruction, distortion, mutilation, or other modification described in subsection (a)(3) unless the modification is caused by gross negligence." *Id.* § 106A(c)(2). Second, VARA establishes special rules for the removal of works of art that are incorporated into a

3

building (such as the mural at issue here), the application of which turns on whether and how removal will impact the work.  If removal will result in the "destruction, distortion, mutilation, or other modification of the work," the work may be removed only pursuant to a written instrument signed by its author and the building owner.  *Id.* § 113(d)(1).  Works capable of removal without destruction or mutilation, on the other hand, may be removed if the building owner provided the author with written notice of the intended action and the "the person so notified failed, within 90 days after receiving such notice, either to remove the work or to pay for its removal."  *Id.* § 113(d)(2).

    **B.**    **Facts of the Present Dispute.**

Accepting the allegations of the Complaint as true for purposes of this Motion, the relevant facts are as follows.  In 1993, Vermont Law School ("VLS") agreed for Plaintiff Samuel Kerson ("Kerson"), a multi-disciplinary visual artist, to create a mural[2] on the upper level of the Jonathan B. Chase Community Center (also known as Chase Hall) (the "Mural").  Complaint, ¶¶ 13, 19.  The Mural, titled "The Underground Railroad, Vermont and the Fugitive Slave," depicts "the history of slavery, . . . resistance to slavery, and the Underground Railroad."  *Id.*, ¶¶ 19, 22.

---

[2] The Complaint sometimes characterizes the mural as two independent works. *See, e.g.*, Complaint, ¶ 1.  The initial letter agreement with Vermont Law School—quoted in the Complaint—refers to the mural as a single work, *id.*, ¶ 19, as does Plaintiff's own website. *See* Samuel Kerson, *The Underground Railroad, Vermont and the Fugitive Slave*, http://www.samkerson.com/murals/undergroudmural.html (last visited Dec. 15, 2020) (referring to the work as a mural that "consists of two 8' X 24' panels with four scenes in each panel").  The matter is not material to the present motion:  it would only be relevant were the court to reach the question of statutory damages.

Painted by Kerson and artists working under his supervision with acrylic paint directly onto the sheetrock walls of Chase Hall, the Mural was completed in 1994. *Id.*, ¶¶ 1, 21, 23.

In early 2020, certain students who "found the [Mural] 'offensive'" communicated to VLS their objections to the Mural's ongoing presence and display at the school. *Id.*, ¶¶ 2, 26. Responding to those concerns, VLS announced in July 2020 that it intended to paint over the Mural. *Id.*, ¶ 27. As the Complaint aptly notes, this initial announcement was made "in complete ignorance . . . of Kerson's rights under VARA." *Id.*, ¶ 29. In August 2020, upon recognition of the rights potentially bestowed on Kerson under VARA, VLS issued a notice to Kerson advising that he had ninety days to remove the Mural, or VLS would "remove or cover" the Mural. *Id.*, ¶ 30.

VLS provided Kerson access to the Mural to inspect the work during the ninety-day notice period. *Id.*, ¶ 31. Kerson arranged for carpenters to visit and evaluate the work; they ultimately concluded that the Mural was "painted directly onto the sheet rock affixed to the building and incorporated into the walls of Chase Hall in such a manner that any effort to remove [the Mural] would require disfiguring the Mural[] and cutting [it] into sections," resulting in damage to the work. *Id.*, ¶¶ 32, 33. Kerson's attorney communicated to VLS his view that

removing the Mural would result in destruction,[3] and, in response, VLS advised that it intended instead to conceal the Mural behind acoustical panels. *Id.*, ¶¶ 34, 35.

This lawsuit followed.

## Legal Standard

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts "apply a 'plausibility standard,' which is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). First, while "'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.'" *Id.* A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation and quotation marks omitted).

---

[3] Kerson is also on public record taking the position that the Mural could be removed. *See* John Gregg, *Could It Be Curtains for "Offensive" Mural at Vermont Law School?*, Valley News (July 15, 2020) ("Kerson said it would also be possible to take out the panels, rather than destroying the mural, but such a removal would 'require expertise.'"), *available at* https://www.vnews.com/Primary-Source-is-it-curtains-for-VLS-mural-35238723 (last accessed Dec. 14, 2020).

<u>**Argument**</u>

**A.      <u>No Claim Lies Under VARA for Covering a Work.</u>**

At the core of artist Samuel Kerson's Complaint lies a radical notion: that the rights granted to him under VARA trump the interests of VLS, a private educational institution, in deciding whether or not to display his work.  In Kerson's view, VARA absolutely prohibits VLS from covering the Mural and thereby removing it from public display without his consent—regardless of how the presence of the Mural might impact VLS's educational mission and its ability to foster an inclusive, diverse learning community.  Fortuitously, that is not the law.  There is no support in the text of VARA for Kerson's interpretation, and to construe the law as Kerson seeks would raise serious constitutional issues.  Because VLS's decision to cover the Mural does not give rise to any plausible claim under VARA, the Complaint must be dismissed.

The "starting point in statutory interpretation is the statute's plain meaning, if it has one." *United States v. Jones*, 965 F.3d 190, 194 (2d Cir. 2020) (quoting *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000)).  Here, the "case begins, and pretty much ends, with the text" of VARA.  *Id.* (citation and quotation marks omitted).  This is so for two reasons.  First, VARA's proscriptions, where they apply, extend by their plain terms only to destruction or "intentional distortion, mutilation, or other modification" of a work of visual art; they do not apply to the decision to cover a work.  *See* 17 U.S.C. § 106A(a)(3).  Whatever umbrage an artist might take at the act of covering his or her work and removing it from view, the act of covering is not an act of destruction, provided that it leaves the work intact.  Nor

can covering a work plausibly be said to "distort," "mutilate," or "modify" the work; where a piece of art is wholly removed from view, there is nothing left that could be said to be modified or distorted such that it prejudices the artist's honor or reputation.

Second, VARA expressly provides that any claimed "modification" of a work "which is the result . . . of the public presentation, including lighting and placement, of the work is not a destruction, distortion, mutilation, or other modification described in subsection (a)(3) unless the modification is caused by gross negligence." *Id.* § 106A(c)(2).  The legislative history of VARA confirms that this presentation exclusion was intended to cover not only choices in how to display a work, but also the decision to *remove* it from display.  The House Report on VARA explained that "[g]enerally, the removal of a work from a specific location comes within the exclusion because the location is a matter of presentation, unless the work cannot be removed without causing the kinds of modifications described in proposed subsection 106A(a)(3)."  H.R. Rep. No. 514, 101st Cong., 2d Sess. 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6915, 6927.  While the history of the statute does not directly address the decision to cover a work that cannot be removed, allowing a work to be covered is consistent with VARA's terms and the intention of the presentation exception.

Not surprisingly, this was the conclusion reached by the one judicial decision to address the issue, *Massachusetts Museum of Contemporary Art Found., Inc. v. Buchel*, 593 F.3d 38 (1st Cir. 2010).  In *Buchel*, an artist asserted a claim against

Mass MoCA for, among other things, partially covering with tarpaulins an incomplete art installation authored by the artist.  As here, the artist contended that the act of partially covering his work modified and distorted it, thereby violating the right of integrity safeguarded by § 106A(a)(3)(A).  The court disagreed:

> [T]he mere covering of the artwork by the Museum, its host, cannot reasonably be deemed an intentional act of distortion or modification of [the plaintiff's] creation. To conclude otherwise would be to say that, even if all had gone well, the Museum would have been subject to a right-of-integrity claim if it had partially covered the work before its formal opening to prevent visitors from seeing it prematurely.   [¶] . . . In our view, a finding that the Museum's covering of the installation constituted an intentional act of distortion or modification of [the plaintiff's] artistic creation would stretch VARA beyond sensible boundaries.

*Id.* at 61–62.  *Cf. Phillips v. Pembroke Real Est., Inc.*, 288 F. Supp. 2d 89, 100 (D. Mass. 2003) (concluding that "an artist has no right to the placement or public presentation of his [work] under the exception in § 106A(c)(2)" and holding that the defendant was not obligated under VARA to continue to display the plaintiff's sculptures in a public sculpture park "as VARA provides no protection for a change in placement or presentation"), *aff'd*, 459 F.3d 128 (1st Cir. 2006).

Finally, Kerson's interpretation of the statute must also be rejected because construing VARA to require the ongoing display of a controversial and divisive work of art by a private institution would raise serious constitutional questions.  The First Amendment generally prohibits the government from compelling private parties to make or endorse speech with which they disagree.  *See, e.g.*, *United States v. United Foods, Inc.*, 533 U.S. 405, 410 (2001); *see also Burns v. Martuscello*, 890 F.3d 77, 85 (2d Cir. 2018) ("[B]etween compelled silence and compelled speech,

compelled speech is the more serious incursion on the First Amendment.").  The

conflict between First Amendment principles and a law arguably compelling

continued display of artwork has been addressed in only one published decision,

*Pembroke Real Estate*, which considered the application of a state law, the

Massachusetts Art Preservation Act, to the display of works in a public sculpture

park.[4]  *See* 288 F. Supp. 2d at 103-04.  While the court in *Pembroke* ultimately

rejected the argument that ordering the continued display of the plaintiff's works

would abridge the defendant's First Amendment rights, it emphasized that the

defendant there had "a diminished claim to First Amendment protection because it

agreed to manage a public park," and "[a]n owner of purely private property would

have a stronger First Amendment interest in his own artistic expression—and the

right to change his mind about artistic merit after purchasing art."  *Id.* at 104.

The Court need not—and, indeed, should not—resolve this potential

constitutional issue.  The canon of constitutional avoidance directs that, "when a

serious doubt is raised about the constitutionality of an act of Congress," courts

should "first ascertain whether a construction of the statute is fairly possible by

which the question may be avoided."  *Nielsen v. Preap*, 139 S. Ct. 954, 971 (2019).

Hence, even if there were some ambiguity in VARA that could be read to support

Kerson's construction, the canon of constitutional avoidance would weigh sharply

---

[4] The plaintiff in *Pembroke* also raised claims under VARA, claiming that his sculptures were "site-specific works" that inherently would be modified or destroyed in violation of VARA if they were removed from the park.  *See* 288 F. Supp. 2d at 96-100.  The court rejected the claims, concluding that VARA does not protect removal of works, whether or not "site-specific," in light of the public presentation exception.  *Id.* at 100 (observing that "[d]espite 'le droit moral,' Congress adhered to 'chacun a son gout' (each one to his taste) by declining to require the public presentation of art.").

against adopting an interpretation that would compel speech by private parties and thereby raise concerns under the First Amendment.

### B.   The Complaint Fails to Plead a Ripe, Plausible Claim for Destruction of the Mural.

While the Complaint acknowledges that VLS intends to cover the Mural with acoustic panels, the Complaint nonetheless seeks relief related to the removal of the Mural and any resulting destruction, disfiguration, mutilation, or modification.  *See* Complaint at 9.  Any claim based on the removal of the Mural—a course of action that, as alleged in the Complaint, VLS does not have any present intention to pursue—must be dismissed for two reasons.

First, Kerson has failed to plausibly allege that VLS intends to remove or destroy the Mural.  While that may have been VLS's initial intent at a time when it was ""in complete ignorance . . . of Kerson's rights under VARA," Complaint ¶ 29, the Complaint accurately alleges that VLS now intends to conceal the mural behind acoustic panels.  *Id.*, ¶ 35.  As such, the Complaint fails to plead a plausible claim based on removal of the Mural.

Second, to the extent Kerson's claim is based on the fear that VLS may at some future date reverse course and seek to remove the Mural, rather than simply cover it, the issue is not ripe for adjudication.  A claim should be dismissed on ripeness grounds where, as here, the plaintiff fails to demonstrate "a live dispute involving the actual or threatened" violation of his or her rights.  *Renne v. Geary*, 501 U.S. 312, 320 (1991)  The fact that VLS previously resolved to paint over the Mural before it was apprised of Kerson's claimed VARA rights does not present any

11

indication of an "actual or threatened" violation of VARA at present.  *Cf. id.* (noting that past exposure to allegedly unlawful conduct does not establish a present case or controversy).  There were several options for addressing concerns with the Mural, including painting over it, removing it, or concealing it; VLS has chosen the third, leaving no live, judiciable dispute regarding the discarded options.

## <u>Conclusion</u>

This case raises some potentially challenging policy issues regarding the appropriate balance between the rights of an author and an owner of a work of visual art.  It does not, however, present any difficult questions of law: there is no support in the text of VARA for Kerson's bid to bar VLS from covering his work.  Accordingly, his claim fails and the Complaint should be dismissed with prejudice.

Dated at Burlington, Vermont this 1st day of February, 2021.

By  */s/ Justin B. Barnard*
　　　Karen McAndrew, Esq.
　　　Justin B. Barnard, Esq.
　　　DINSE
　　　209 Battery Street
　　　Burlington, VT  05401
　　　802-864-5751
　　　kmcandrew@dinse.com
　　　jbarnard@dinse.com

　　　*Counsel for Vermont Law School, Inc.*

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 1, 2021, I electronically filed with the Clerk of

Court the foregoing document using the CM/ECF system.  The CM/ECF system will

provide service of such filing via Notice of Electronic Filing (NEF) to the following

NEF parties:

Richard Rubin, Esq.
rrubin@rkmvlaw.com

I caused to be served, by U.S. Postal Service, the following non-NEF-registered
parties:

Steven J. Hyman, Esq.
McLaughlin & Stern, LLP
260 Madison Avenue
New York, New York 10016

Dated:  February 1, 2021                    */s/ Justin B. Barnard*
                                             Justin B. Barnard, Esq.