## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

SAMUEL KERSON,                          )
Plaintiff,                              )
                                        )
v.                                      )          No.  5:20-cv-00202-gwc
                                        )
VERMONT LAW SCHOOL, INC.,               )
Defendant.                              )
                                        )
                                        )

## VERMONT LAW SCHOOL, INC.'S OPPOSITION TO
## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Defendant Vermont Law School, Inc. ("VLS"), by and through counsel,

submits this memorandum in opposition to Plaintiff Samuel Kerson's Motion for a

Preliminary Injunction.

### Introduction

Absent from Plaintiff's Motion for a Preliminary Injunction is any attempt to

answer the central question in this litigation: Does the law compel VLS, a private

educational institution, to continue to display Plaintiff's artwork in the face of

complaints by the school community over what many perceive as a caricatured and

offensive depiction of Africans and African-Americans?  Plaintiff comes to the Court

requesting an injunction against the supposed "destruction" of his mural at VLS's

Chase Hall, but this is a red herring.  He knows—and acknowledges—that VLS has

decided against painting over or removing the mural, and intends instead to cover

the work with acoustical panels.  To do so is VLS's right.  Neither the plain

language of the Visual Artist Rights Act ("VARA") nor any authority interpreting

the Act prohibits the owner of a work of art from covering it in a nondestructive manner—to the contrary, the Act expressly reserves to the owner the right to control the public presentation of the work.  Plaintiff cannot compel VLS to display his work.

As Plaintiff has no legal right to the relief he seeks—and cannot show that the installation of panels covering, but not injuring, his work threatens irreparable harm—he lacks any entitlement to injunctive relief.  His motion should be denied on that basis.

## Background

For almost thirty years, Plaintiff's mural, "The Underground Railroad, Vermont and the Fugitive Slave" (the "Mural"), has occupied a central and prominent location on VLS's campus: the loft of the Jonathan B. Chase Community Center (also known as Chase Hall), a space widely used for study as well as school gatherings and events.  Declaration of Associate Dean Shirley Jefferson ("Jefferson Decl.), ¶ 8; Declaration of 3L student April Urbanowski ("Urbanowski Decl.), ¶.  The Mural was undeniably well-intentioned, meant to depict and serve as a reminder of the country's dark history of slavery as well as to celebrate Vermont's role in the Underground Railroad.  Jefferson Decl., ¶ 6; Declaration of 3L student Jameson Davis ("Davis Decl."), Exh. A.  From the time of its completion in 1994, however, there have been complaints about the manner in which the Mural depicts its subject matter.  Davis Decl., ¶ 9; Jefferson Decl., ¶¶ 4-7.

Chief among the concerns that have been articulated is the way in which Africans and African-Americans were painted. Observers have noted the "cartoonish, almost animalistic style" of depiction, Jefferson Decl., ¶ 4, with "large lips, startled eyes, big hips and muscles." Davis Decl., ¶ 5. For some, these features evoke "'Sambos' or other racist coon caricatures." *Id*. The depiction of white figures has also been identified as problematic: white slavers are painted in unnatural green hues, "disassociat[ing] the white bodies from the actual atrocities that occurred," whereas abolitionists appear in white tones, "perpetuat[ing] white supremacy, superiority, and the white savior complex." Davis Decl., Exh. A.

For these reasons, students—particularly those of color—have expressed their discomfort with the Mural for years. Jefferson Decl., ¶¶ 4-7. The prospect of removing the Mural was raised in discussions at VLS's Diversity Committee in 2013, but at the time it was felt there was insufficient support to press the issue further. *Id.*, ¶ 5. The issue ultimately came to a head in the past year, with the murder of George Floyd in Minneapolis and the more widespread national discussion of institutional racism. Jefferson Decl., ¶¶ 8-11; Davis Decl. ¶¶8-11; Urbanowski Decl., ¶¶ 8-9. Associate Dean for Student Affairs and Diversity Shirley Jefferson approached the then-Dean of VLS, Thomas McHenry, to request that the Mural be removed. Jefferson Decl., ¶ 12. At the same time, and independently, a broad group of students, alumni, faculty, and staff presented a demand for the Mural's removal. *Id*.; Davis Decl., ¶ 10; Urbanowski Decl., ¶ 9.

In response to these concerns, VLS initially contemplated painting over the Mural, unaware of VARA and its potential bearing on handling of the Mural. Jefferson Decl., ¶ 13.  Once alerted to VARA, VLS issued a letter to Kerson advising that, unless he arranged to remove the Mural within ninety days, VLS intended to proceed with removal or covering of the Mural.  *See* Exh. 3 to Plaintiff's Motion for a Preliminary Injunction ("Motion") (Doc. 6-4).  In the interim, the school covered the mural with a temporary cloth curtain.  Declaration of VLS Buildings and Grounds Supervisor Jeffrey Knudsen ("Knudsen Decl."), ¶ 8; Jefferson Decl. ¶ 13.

In light of Plaintiff's objections to removal of the Mural, VLS eventually decided on a compromise solution: installing a permanent cover over the mural. Jefferson Decl., ¶ 14; Davis Decl., ¶ 11; Urbanowski Decl., ¶ 10.  After researching panels or materials that could be used to remove the Mural from view without harming it in the process, VLS has elected to proceed with acoustical panels constructed of a light-weight frame housing sound-dampening material, covered in a cushioning fabric.  Knudsen Decl., ¶ 7.  A separate wooden frame will be constructed which will be affixed to the wall surrounding the Mural, not to the Mural itself.  *Id.*, ¶¶ 8-9.  The acoustical panels have been purchased by VLS, but VLS is awaiting resolution of the Plaintiff's Motion to proceed with installation. Knudsen Decl., ¶ 11.

## **Argument**

The action that Plaintiff Kerson seeks to enjoin here—the installation of a cover concealing, but leaving intact, his Mural at Chase Hall—is wholly within

VLS's rights.  Kerson cites no authority for the proposition that merely covering his work constitutes an actionable violation of VARA, for, as explained in VLS's Motion to Dismiss,[1] there is none.  And, even were the Court to disagree, the covering is reversible without any harm to the Mural or Kerson.  This case presents none of the circumstances that could possibly warrant the "extraordinary remedy" of a preliminary injunction.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citations and internal quotation marks omitted).

Issuance of a preliminary injunction requires that the movant demonstrate both irreparable harm absent the requested relief and either (a) a likelihood of success on the merits or (b) "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardship tipping decidedly toward the party requesting the preliminary relief." *Riley v. Windsor S.E. Supervisory Union*, No. 5:20-CV-108, 2020 WL 4922295, at *2 (D. Vt. Aug. 13, 2020) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 71 (2d Cir. 1979)).  Because Plaintiff Kerson's showing falls far short of carrying this burden, the Court should deny the request for an injunction.

## A.   The Covering Will Not Damage the Mural and Can Be Reversed, Thus There Is No Risk of Irreparable Harm.

Plaintiff's motion fails in the first instance because there is no threat of irreparable harm to his legally protected interests.  Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *A.H. v. French,* No. 2:20-CV-151, 2021 WL 62301, at *8 (D. Vt. Jan. 7, 2021) (citation and

---

[1] *See* Vermont Law School's Motion to Dismiss (Doc. 10), at 7-11.

quotation marks omitted).  To qualify as "irreparable," the claimed harm must be "neither remote nor speculative, but actual and imminent."  *Id.* (quoting *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015)).  Such harm is absent here.  Given the nondestructive and physically reversible nature of the cover VLS intends to install over Kerson's Mural, there is no plausible showing of any injury, let alone irreparable harm.

Neither of the two arguments Plaintiff advances on the issue of irreparable harm holds water.  First, Plaintiff suggests that "once the Mural[] [is] destroyed, this action cannot be reversed," leaving him without a satisfactory remedy.  Motion at 14.  While that might be true if the Mural was slated to be painted over or otherwise destroyed, that is not what VLS intends to do.  As detailed above and in the accompanying Declaration of Jeffrey Knudsen, VLS is preparing to cover the Mural by erecting a wooden frame, attached to the wall but not to the Mural itself, to which acoustic panels will be affixed.  The covering will remove the Mural from sight but will not cause damage to the Mural.  Even if Plaintiff were to establish a viable claim under VARA and prevail on the merits—which he cannot—the covering could be deconstructed and removed.  Hence, there is no risk of harm to the Mural or Plaintiff's interests, let alone an "actual and imminent" one.  Plaintiff cannot conjure up irreparable harm by attributing to VLS the intention to take an action (painting over the Mural) that VLS has specifically disavowed.

Second, Plaintiff claims that he is entitled to a presumption of irreparable harm because VARA is an amendment to the United States Copyright Act, and

irreparable harm is generally presumed in copyright cases.  In support of this proposition, Plaintiff cites a 1994 case in which a district court in this Circuit suggested that VARA plaintiffs "are, arguably, entitled to the presumption of irreparable harm generally available in cases of copyright infringement." *Carter v. Helmsley-Spear, Inc.,* 852 F. Supp. 228, 232 (S.D.N.Y. 1994).  What Plaintiff fails to note, however, is that the Second Circuit has since abrogated the presumption of irreparable harm for copyright cases.  *See Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010) ("After [the Supreme Court's decision in *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)], courts must not simply presume irreparable harm. Rather, plaintiffs must show that, on the facts of their case, the failure to issue an injunction would actually cause irreparable harm." (citation omitted)).  The argument is thus foreclosed.

As Plaintiff cannot fall back on a presumption of harm—and there is no actual threat of irreparable injury—he cannot establish any entitlement to a preliminary injunction.

### B.  Because Covering Artwork Does Not Violate VARA, Plaintiff Cannot Show a Likelihood of Success or a Serious Question Going to the Merits.

Plaintiff likewise fails to establish any likelihood of success on the merits of his claim—or even raise a question going to the merits, let alone a serious one.

Plaintiff offers up two theories.  First, he argues that the Mural is a work of "recognized stature" protected from destruction under VARA.  *See* 17 U.S.C. § 106A(a)(3)(B).  As explained in VLS's Motion to Dismiss, which VLS incorporates by reference here, VARA creates two categories of protection for the integrity of

7

works of visual art: all works are protected against intentional distortion, mutilation, or modification prejudicial to the artist's reputation or honor, and works of "recognized stature" are protected against destruction.  *Id.*  Whether or not the Mural actually qualifies as a work of "recognized stature" entitled to such protection is academic[2]—for, contrary to Plaintiff's assertion, VLS has no "stated plan to destroy" the Mural.  *See* Motion at 12.  Rather, VLS intends to permanently cover the Mural in a manner that will neither harm nor destroy it, as Plaintiff acknowledges elsewhere in his Motion.  *See id.* (referring to "VLS's stated plan to permanently cover the Mural[]").  As VLS's "stated plan" would not infringe upon whatever rights Plaintiff might assert under § 106A(a)(3)(B), Plaintiff has no claim under the statute.

Second, Plaintiff argues that covering the Mural will be "prejudicial to [his] honor or reputation."  This is so, he contends, because it would "send the clear message to the art world and general public" that the Mural is "offensive and unworthy to be viewed" and thereby "tarnish Kerson's reputation as an artist committed to progressive causes."  Motion at 13.  That assertion is, to put it lightly, debatable.[3]  However, the Court need not resolve whether these fears of reputational harm have a basis in fact, for VARA does not create a free-standing cause of action for any perceived injury to artistic reputation or integrity.  VARA

---

[2] To be clear, VLS does not concede that the Mural is a "work of recognized stature" within the meaning of VARA, and reserves its rights to present evidence rebutting Plaintiff's argument if the question ever were to be relevant.

[3] Reasonable minds could disagree as to whether the removal of the Mural from view threatens more damage to Kerson's reputation as a progressive than his campaign to compel VLS to continue to display his work over objections from students of color, among others, to depictions of Africans and African-Americans that are perceived as reminiscent of racist "Sambo" and "coon" iconography.

only conveys the right to prevent an "*intentional distortion, mutilation, or other modification*" of a work of art that "would be prejudicial to [the artist's] honor or reputation." 17 U.S.C.A. § 106A(a)(1)(3)(A) (emphasis added). No such distortion, mutilation, or modification is alleged here. As explained in VLS's Motion to Dismiss, the decision to cover or remove a work from view is not actionable under the plain language of VARA—no matter how that decision might bear on the artist's honor or reputation.

Plaintiff fails to make out a viable claim under VARA in support of his Motion for a Preliminary Injunction.

### C.   The Balance of Equities and Public Interest Weigh Against an Injunction.

Plaintiff's Motion makes reference to the balance of equities and the public interest, considerations that would only come into play if Plaintiff could establish irreparable harm and a serious question going to the merits of his claim—which he cannot. Even if they were relevant, however, they would disfavor issuance of an injunction. The decision to cover the Mural has been shaped by VLS's educational objectives, among them its commitment to educating students in a diverse community. The administration of VLS has listened to the concerns and views expressed by students, faculty, and community members regarding the Mural's depiction of Africans and African-Americans and the manner in which the presence of the Mural impacts the learning environment and experience of students at VLS. While recognizing that the intentions that animated the creation of the Mural were good ones, VLS has decided it cannot ignore those views.

9

VLS's interest in carrying out its educational mission and fostering an inclusive and respectful learning environment for its students outweighs whatever interest Plaintiff may have in ensuring the ongoing display of his work.  As covering the Mural will not cause harm to the work, the equities tilt sharply in VLS's favor. Moreover, to the extent the public interest is implicated in a private educational institution's decision on whether to display a controversial and divisive work of art, it favors giving educators the discretion to take the action most consistent with attainment of the school's educational goals.  *Cf. J.A. ex rel. T.L. v. Moorhead Pub. Schools*, No. CIV. 14-4639 ADM/LIB, 2014 WL 6684984, at *2 (D. Minn. Nov. 25, 2014) (citing the preservation of the learning environment and giving school administrators discretion to make educational decisions as "compelling public interest arguments"); *Requa v. Kent Sch. Dist. No. 415*, 492 F. Supp. 2d 1272, 1283 (W.D. Wash. 2007) (noting public interest in school's "ability to maintain a working and learning environment").

## <u>Conclusion</u>

For all of the foregoing reasons, as well as those set forth in VLS's Motion to Dismiss, Plaintiff cannot establish any entitlement to the extraordinary remedy of a preliminary injunction.  Plaintiff's Motion should be denied and his Complaint dismissed.

Dated at Burlington, Vermont this 3rd day of February, 2021.

By  */s/ Justin B. Barnard*
Karen McAndrew, Esq.
Justin B. Barnard, Esq.
DINSE
209 Battery Street
Burlington, VT  05401
802-864-5751
kmcandrew@dinse.com
jbarnard@dinse.com

*Counsel for Vermont Law School, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 3, 2021, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system.  The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

Richard Rubin, Esq.
rrubin@rkmvlaw.com


I caused to be served, by U.S. Postal Service, the following non-NEF-registered parties:

Steven J. Hyman, Esq.
McLaughlin & Stern, LLP
260 Madison Avenue
New York, New York 10016


Dated:  February 3, 2021           /s/ *Justin B. Barnard*
                                       Justin B. Barnard, Esq.