UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

SAMUEL KERSON, )
)
    Plaintiff, ) No. 5:20-cv-00202-cr
v. )
VERMONT LAW SCHOOL, INC. )
)
    Defendant. )

### PLAINTIFF SAMUEL KERSON'S REPLY TO VERMONT LAW SCHOOL, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff Samuel Kerson ("Plaintiff" or "Kerson") by and through counsel, submits this Reply Memorandum to Defendant Vermont Law School ("Defendant" or "VLS") Opposition to Plaintiff's Motion for a Preliminary Injunction (hereinafter "VLS Opposition").

### INTRODUCTION

Plaintiff reiterates and incorporates by reference the facts and arguments stated in his Motion for a Preliminary Injunction, filed in this action on January 20, 2021. On February 3, 2021, VLS filed its opposition thereto. Separately, on February 1, 2021, VLS, in lieu of an Answer to the Complaint, moved to dismiss the complaint. The VLS Opposition incorporates VLS' Motion to Dismiss (*see*, VLS Opposition, at p. 7).[1]

There is no dispute concerning the facts underlying this action. As set forth in detail in the Complaint and Plaintiff's subsequent filings, Plaintiff painted two murals, entitled *The Underground Railroad, Vermont and the Fugitive Slave* (the "Murals") in 1993 on two walls in Chase Hall, a building located on the VLS campus in South Royalton. VLS invited Plaintiff to

---

[1] Because the VLS Opposition and VLS's Motion to Dismiss are intertwined, Plaintiff's Reply necessarily will address VLS's Motion to Dismiss, to some extent. Notwithstanding, Plaintiff explicitly reserves his right to respond to VLS's Motion to Dismiss in a separate filing on or before the due date of March 3, 2021.

paint the Murals on the walls of Chase Hall. The parties did not execute any written instrument at such time, or thereafter, signed by VLS and Plaintiff, specifying the terms of the installation. The Murals have been on display at Chase Hall for more than 25 years. (Complaint, at ¶¶18-25.)

After receiving complaints from some students about the Murals in early 2020, VLS, in or about the beginning of July 2020, publicly announced that it planned "to paint over" the Murals. (Complaint, at ¶27.) Thereafter, on August 5, 2020, VLS informed Plaintiff that he had 90 days to remove the Murals and, failing that, VLS would remove or cover them. (Complaint, at ¶30.) An inspection confirmed that the Murals could not be removed without destroying or mutilating them. (Complaint, at ¶33, and Declaration of Daniel Hecht, Exhibit 7 to Plaintiff's Motion for a Preliminary Injunction.) On November 18, 2020, counsel for VLS's advised that

My understanding is that the current intention [of VLS] is to cover the murals with acoustical panels that will be firmly affixed to the wall structure.

(Complaint, at ¶35, and Exhibit 4 to Plaintiff's Motion for a Preliminary Injunction.)

VLS concedes these facts (*see*, VLS Opposition, p. 4). Moreover, for purposes of the Motion to Dismiss, the facts as pleaded, including that the Murals are a work of recognized stature created by a prominent artist, are deemed to be true.

In the VLS Opposition and VLS's Motion to Dismiss, VLS now, represents that its intention is to install a permanent cover over the Murals, affixed to the wall surrounding the Murals, but not to the Murals themselves. (VLS Opposition, at p. 4). In its February 12, 2021 response to this Court's inquiry, VLS confirmed the foregoing and, additionally advised that the Murals "will be permanently be covered and thus will not be accessible to visitors or students."

VLS argues that this Court should not issue a Preliminary Injunction because:

2

1) VLS cannot be compelled to continue to display Plaintiff's Murals; and

2) Neither the Visual Artist Rights Act (VARA), 17 U.S.C. §106A, *et seq.* or any authority interpreting VARA prohibits the owner of a work of art from covering it in a non-destructive manner.

Plaintiff submits that VLS's current plans to entomb the Murals by permanently covering them and making them inaccessible violates his rights under VARA. There is no legal support for VLS's proposition that, as the owner of the work, it is entitled to cover up the Murals in a non-destructive manner.[2] Pursuant to §113, VLS had the opportunity to reserve the right to modify the Murals, including the right to cover them, when it invited Plaintiff to paint them on the walls of Chase Hall. Having failed to avail itself of this opportunity 25 years ago, VLS cannot now belatedly assert a right that eviscerates Plaintiff's VARA rights. *Ignorantia juris non excusat* (ignorance of the law excuses not). Accordingly, Plaintiff respectfully asks this Court to grant the Preliminary Injunction and maintain the *status quo* until resolution of this action.

## ARGUMENT

A. <u>Plaintiff Makes the Requisite Showing to Obtain A Preliminary Injunction</u>

In order to obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships

---

2 In fact, VARA specifically states that the rights of artists, conferred by 17 U.S.C §106A(a), with respect to a work of visual art "is distinct from ownership of any copy of that work, or of a copyright or any exclusive right under a copyright in that work". 17 U.S.C §106A(e).

3

tips in the movant's favor; and (4) that the public interest would not be disserved.

VLS argues that if it ultimately proceeds with permanently covering up the Murals, Plaintiff cannot succeed in showing that (a) VLS's stated plans are an intentional distortion, mutilation, or other modification of the Murals which would be prejudicial to his honor or reputation or (b) that VLS's stated plans are an intentional or grossly negligent destruction of the Murals, assuming they are works of a recognized stature. The VLS Opposition is devoid of any legal support for VLS's self-serving statement that its plan to permanently entomb the Murals and remove them from view is neither a distortion, mutilation, or other modification nor a destruction of the Murals. For that, one must turn to VLS's Motion to Dismiss.

VLS argument that the rights that VARA provides to artists extend only to destruction or "intentional distortion, or other modification" of a work of visual art but not to covering up a work is neither supported by the language of VARA, nor by case law. Rather, the proposed intentional cover-up is prejudicial to Kerson's honor or reputation as the original Murals can no longer be viewed,[3] and entombing the Murals in effect destroys the work.

To support its argument, VLS invokes the so-called "public presentation" exception of VARA, which states that "[t]he modification of a work of visual art which is the result of conservation, or of public presentation, including lighting and placement, of the work is not a destruction, distortion, mutilation, or other modification described in subsection (a)(3) unless

---

3 In its February 12, 2021 response to the Court's inquiry, VLS argues that the Murals can still be viewed because photos of the Murals are in Kerson's book. As explained by Professor Jane C. Ginsburg, in her congressional testimony, there is a qualitative difference in viewing originals and copies of a work of art, *e.g.*, "[T]he physical existence of the original itself possesses an importance independent from any communication of its contents by means of copies.... Were the original defaced or destroyed, we would still have the copies, we would all know what the work looked like, but, I believe, we would all agree that the original's loss deprives us of something uniquely valuable." H.R. Rep. No. 514, 101st Cong. 2d Sess. 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6915, 6922

4

modification is caused by gross negligence." 17 U.S.C. §106A(c)(2). While referencing the pertinent legislative history ("[g]enerally, the removal of a work from a specific location comes within the exclusion because the location is a matter of presentation, unless the work cannot be removed without causing the kinds of modifications described in proposed subsection 106A(a)(3)") H.R. Rep. No. 514, 101st Cong., 2d Sess. 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6915, 6927, VLS fails to reference the *raison d'etre* for the subsection, which states "[u]nder subsection (c)(2), galleries and museums continue to have normal discretion to light, frame, and place works of art. *However, conduct that goes beyond presentation of a work to physical modification of it is actionable*." *Id*, emphasis, supplied. Permanently covering up the Murals clearly goes beyond presentation.

      VLS cites to two cases, neither of which involved a work of visual art that had been incorporated in or made part of a building. VLS's reliance on *Massachusetts Museum of Contemporary Art Found., Inc. v. Büchel*, 593 F.3d 38 (1st Cir. 2010) is misplaced. In that case, the museum attempted to accommodate the artist by concealing an incomplete work, because he believed that exhibiting the work in that state would be detrimental to his honor and reputation. The artist alleged that the museum's efforts were insufficient as the incomplete work was still visible (the attempt was characterized as "hiding an elephant behind a napkin"). The Court was not prepared to entertain a VARA claim, based on the museum's temporary placement of tarpaulins over the installation, prior to the opening of the exhibition. Here, on the other hand, VLS's stated plans to permanently cover up the Murals is an admitted intentional act that modifies the work. The reasoning of *Mass MoCA* is not applicable to the facts here.

In *Phillips v. Pembroke Real Est., Inc.*, 186 F. Supp. 2d 89 (D. Mass. 2003); *aff'd.*, 459 F.3d 128 (1st Cir. 2006), the District Court held that in view of the public presentation exception, an artist did not have the right to compel the manager of a public park to display his sculptures in a particular manner, *e.g.* the artist could not prevent the removal and relocation of the sculptures.[4] The 7th Circuit, rejected *Phillips*' conclusion that site-specific art is excluded from VARA and, in doing so, took a much narrower view of the public presentation exception, stating "[t]he exception basically provides a safe harbor for *ordinary* changes in the public presentation of VARA-qualifying artworks; the artist has no cause of action unless through gross negligence the work is modified, distorted, or destroyed in the process of changing its public presentation" (*emphasis supplied*). *Kelley v. Chicago Park District*, 635 F.3d 290, 306 (7th Cir. 2011) Here, VLS's plan to permanently conceal the Murals behind a wall, clearly goes beyond "ordinary changes in the public presentation". Congress' inclusion of the public presentation exception was an accommodation to museums and galleries, rather than a mechanism whereby an owner of a building could nullify an artist's VARA claims by simply covering up the work. Whether or not the concealment physically touches the Mural is irrelevant, it still is a modification. (Plaintiff addresses VLS's constitutional argument *infra*.)

17 U.S.C. §113 of VARA, provides a mechanism for the parties to address the issues raised herein by a written agreement. This section applies to works of visual art that have been incorporated into a building, as is the case here. §113(d)(1)(B) provides that the author and the building owner, in a signed written agreement, can specify that installation of the work may

---

4 On appeal, the 1st Circuit affirmed, albeit on an alternate ground, to wit, that site specific works are categorically excluded from the works covered by VARA.

subject the work to destruction, distortion, mutilation, or other modification, by reason of its removal, and as a result the rights granted pursuant to paragraphs (2) and (3) of § 106A(a) shall not apply. The purpose of this provision is to ensure that the author is made fully aware of the circumstances surrounding the installation and potential removal of the work and has nevertheless knowingly subjected the work to possible modifications that would otherwise be actionable under § 106A. H.R. Rep. No. 514, 101st Cong., 2d Sess. 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6915, 6930. As noted in the House Report, §113(d) "sets forth a general rule that authors of works of visual art incorporated into buildings are protected under section 106A. … Whether the rights set forth in paragraphs (2) and (3) of section 106A(a) apply is controlled not by who owns the building at any given time, but by the fact of installation of a work in a building and the circumstances surrounding that installation." *Id*.

  VLS could have negotiated and executed a written agreement with Kerson back in 1993, or thereafter, specifying the terms governing the installation and maintenance of the Murals, including, but not limited to VLS's stated plan of action to permanently cover the Murals. VLS failed to avail itself of this opportunity and now is asking this Court to permit it an end-run around the rights that VARA grants to Plaintiff.

  VLS has raised the issue that application of VARA to the murals will unconstitutionally infringe on its first amendment rights. Although it asserts that the Court "…should not resolve this *potential* (emphasis added) constitutional issue" (VLS Opposition, at p.9), some comment as to this potential claim is warranted.

  First, essentially VLS wants this court to declare that the statute's protection of the

7

artistic work and Kerson's integrity and honor must be rejected because the VLS has a first amendment right to change its mind and that VARA is impermissibly requiring VLS to engage in compelled speech. Yet VLS can find no court opinion in support of such an extreme position. Its sole cite is to dicta in *Phillips* which, in fact, does not support VLS' contention and which involved a state statute, not a federal one. The difference, of course, is significant. As the district court in *Carter v. Helmsley-Spear, Inc.* 861 F.Supp. 303 (S.D.N.Y. 1994), *rev'd. on other grounds*, 71 F.3d 77 (2nd Cir. 1995) noted, in considering whether VARA infringed on a property owner's fifth amendment rights, a contention comparable to VLS' first amendment claim, defendants making such a constitutional claim face a heavy burden since there is a presumption that Congress passed statutes are constitutional, *citing FEC v. Political Contribution Data, Inc.*, 943 F.2nd 190, 191 (2nd Cir. 1991).. Clearly, at this stage of the proceeding and on the record before this court, there is no basis for this court to entertain VLS' potential constitutional argument.

      Second, it must be noted that VLS' purported compelled speech claim must fail for other reasons as well. VLS was certainly not compelled to have its walls painted with a mural that was viewed as a testament to Vermont's participation in the underground railroad helping to free the slaves. It invited Kerson to paint the murals and as the record indicates, proudly celebrated their completion. At the time it agreed with Kerson to undertake the painting of the murals, VARA was in existence and considering VLS' status as a law school, should presumably have been aware of its terms. As discussed *supra*, VARA gave VLS the opportunity to have Kerson execute a waiver of his rights under §113(d) of the statute and

permit VLS to do as it pleased with the murals notwithstanding VARA's protections. It failed to do so and cannot look now to the first amendment to rectify its lack of diligence. Interestingly, the District Courts in *Carter* and *Phillips*, in discussing the constitutional arguments, noted that the property owners' failures to obtain a waiver under the statute so they could remove, destroy, or modify the art, undermined their belated constitutional claims.  VLS should fare no better.

Based on the foregoing, Kerson has shown a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor.

B.  Without a Preliminary Injunction Plaintiff will Suffer Irreparable Harm

VLS argues that there is no likelihood of irreparable injury because the permanent covering can be reversed, allegedly without damaging the Murals. Initially, this contention is based entirely on the say so of VLS. Plaintiff has not had the opportunity to consult with an expert to confirm the veracity of VLS's contention. More fundamentally, the fact that the Murals will be inaccessible for viewing, will cause continued injury to Plaintiff's honor and reputation as well as to the integrity of the work. As noted *supra*, viewing the Murals in photographs in a book is not a satisfactory substitute.

C.  The Balance of Equities Support Imposition of a Preliminary Injunction

Finally, VLS contends that the balance of equities favor covering up the Murals because their continued presence in an uncovered state adversely impacts the learning environment and experience of students at VLS. In support of this contention, VLS has made of record affidavits

9

from an administrator and two students. Plaintiff submits that the objection to the mural is by no means universal. Attached as Exhibit 1 is a supplemental Declaration of Samuel Kerson referring to a Change. Org petition to the law school dean with almost one thousand signatures supporting the preservation of the mural; and two emails from VLS students who strongly condemn the effort to remove the Murals. These concerns are as valid as those stated by VLS.

VLS's concerns are particularly misplaced as it acknowledges that in view of the present pandemic, there are no students expected on campus for the foreseeable future. Accordingly, VLS would suffer no harm in maintaining the Murals in their current state.

## CONCLUSION

For all the foregoing reasons, a preliminary injunction to preserve the status quo is indicated and should be granted.

|  |  |
|---|---|
| By: /s/ Steve Hyman | **PLAINTIFF, SAMUEL KERSON** <br> By: /s/ |
| Steven J. Hyman (2097) <br> McLAUGHLIN & STERN, LLP <br> 260 Madison Avenue <br> New York, NY 10016 <br> Phone (212) 448-1100 <br> Fax (212) 448-0066 <br> shyman@mclaughlinstern.com <br> *Attorneys for Plaintiff* | Richard I. Rubin (7012) <br> RUBIN, KIDNEY, MYER & VINCENT <br> 237 North Main Street, Suite 3 <br> Barre, VT 05641 <br> Phone: (802) 479-2514 <br> Fax: (802) 479-2516 <br> rrubin@rkmvlaw.com <br> *Attorneys for Plaintiff* |

Date: February 17, 2021