UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | | |
|---|---|---|
| SAMUEL KERSON | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:20-cv-00202-gwc |
| | ) | |
| v. | ) | |
| | ) | |
| VERMONT LAW SCHOOL, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF SAMUEL KERSON'S ANSWER TO MOTION TO DISMISS
AND MEMORANDUM OF LAW OPPOSING MOTION**

Plaintiff Samuel Kerson ("Plaintiff" or "Kerson") by and through counsel, answers Defendant Vermont Law School's ("Defendant" or "VLS") Motion to Dismiss the Complaint, pursuant to Fed. R. Civ. P 12(b)(6) and submits this memorandum in opposition. VLS's Motion to Dismiss must be denied as the Complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

VLS fails to creditably challenge the factual assertions in the Complaint including, but not limited to, the allegation in ¶35 that it is VLS's "intention to cover the mural with acoustical panels that will be firmly affixed to the wall structure." (*See* Exhibit 4 to the Complaint.) Rather, than basing its Rule 12(b)(6) motion only on the complaint itself, as required, VLS argues that the Visual Artist Rights Act (VARA), 17 U.S.C. §106A, does not permit a challenge to its stated plans to permanently cover Plaintiff's Murals. Essentially, despite the fact that the Complaint plausibly alleges that the covering of the Murals violates Kerson's VARA rights, an allegation that must be accepted as true, VLS is seeking a declaration by this Court that VLS's stated plan to permanently cover the Murals is neither a distortion, mutilation, or other modification, nor a destruction of the Murals. The pleadings accurately reflect what was known to Plaintiff in early

1

December 2020, when the Complaint was filed. Factual issues remain as to the manner of how VLS intended to cover the Murals as well as whether "affixing acoustical panels firmly to the wall structure" would destroy, distort, mutilate, or otherwise modify the Murals. This can only be determined after a full factual inquiry and not at the pleading stage.

On the other hand, any attempt by VLS to rely on materials outside the scope of the Complaint as, for example, its Opposition To Plaintiff's Motion For A Preliminary Injunction, filed on February 3, 2021, or its subsequent filing on February 12, 2021, can only be addressed in a summary judgment motion under Rule 56. Fed. R. Civ. P., after Answer and discovery. It is premature and legally insufficient to deal with these issues in a Motion to Dismiss.

## FACTUAL BACKGROUND

This action arises under VARA and the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202. Kerson filed the Complaint on December 2, 2020. On February 1, 2021, in lieu of an Answer, VLS moved to dismiss the complaint. Kerson also has moved to preliminary enjoin VLS from moving forward with its stated intention to permanently cover the works at issue by firmly affixing acoustical panels to the wall. The Motion for a Preliminary Injunction has been fully briefed and was the subject of a hearing before this Court on February 24, 2021

In 1993, VLS invited Kerson to paint two murals, entitled *The Underground Railroad, Vermont and the Fugitive Slave* (the "Murals") on two walls in Chase Hall, a building located on the VLS campus in South Royalton. Complaint, at ¶19. The Murals depict the history of slavery including the capture and shipment of Africans to the Americas, the selling of captured humans in slave markets, the slave's work condition, the suppression of African culture, abolition, resistance to slavery, featuring important historical figures and the Underground Railroad. *Id* at ¶22. Upon the Murals completion, VLS sponsored an opening ceremony celebrating the Murals. *Id* at ¶23. Prior to the installation of the Murals, and thereafter, VLS could have negotiated an

agreement with Kerson concerning the terms of display of the Murals. VLS failed to do so. The Murals were painted with acrylic paint directly onto the sheet rock walls of Chase Hall and incorporated into the walls in such a manner that any effort to remove them would require disfiguring the Murals and cutting them into sections. As a result, any attempt to remove the Murals would cause significant damage to the Murals and destroy, distort, mutilate or otherwise modify them. *Id* at ¶¶21, 32, 33. The murals have been on display at Chase Hall for more than 25 years.

Kerson is a well-regarded multi-disciplinary visual artist, achieving particular recognition in creating murals. *Id* at ¶¶13, 14. The Murals at issue in this litigation are a work of recognized stature. (*See* Declarations of Marilyn Skoglund and David Schutz, attached as Exhibits 5 and 6, respectively, to Plaintiff's Motion for Preliminary Injunction, filed on January 20, 2021.) The Murals also are featured in a book containing images thereof. This book has been purchased and is part of the collection of public and university libraries, including VLS and the University of Vermont. Complaint at ¶24.

In early 2020, after receiving complaints about the murals, VLS initially announced in July of 2020 that it would paint over the murals. *Id* at ¶27. Then, on August 5, 2020, VLS sought to remove the murals, *Id* at ¶30, and, after recognizing that removal would destroy the Murals, on November 18, 2020, advised that its intention was "to cover the murals with acoustical panels that will be firmly affixed to the wall structure." *Id* at ¶35.

The facts set forth above are substantially conceded by VLS, and for purposes of this Answer to VLS's Motion to Dismiss, must be accepted as true. The Complaint seeks to enjoin VLS from moving forward with its stated plans on the ground that it violates Kerson's rights under VARA. Additionally, as there is an actual controversy between the parties within this Court's jurisdiction, Kerson seeks a declaration by this Court of the rights and legal relations of

the parties under VARA.

## ARGUMENT

### I. Legal Standard Governing a Motion to Dismiss

Rule 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must provide enough detail to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must also be "plausible on its face," allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Under Rule 12, a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on the motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted).

### II. The Complaint Alleges the Elements of a VARA Claim

VARA extends to the author of a work of visual art the legal protection of their moral rights of attribution and integrity. A VARA claim must contain the following elements: 1) Authorship of the work by plaintiff (17 U.S.C. §106A(b)); 2) that the work is a work of visual art (§106A(a)); and 3) that the work of visual art was created on or after June 1, 1991, the effective date of VARA.

4

The Complaint alleges these elements. Authorship by Kerson is alleged in ¶20; ¶18 alleges that the works are murals, which are works of visual art (*Carter v. Helmsley-Spear*, 71 F.3d 77, 84 (2d Cir. 1995), *cert. denied*, 517 U.S. 1208 (1996)); and ¶¶ 18 and 23 allege that the murals were painted in 1993 and completed in 1994.

Once these fundamental elements are established, as is the case here, VARA provides that, subject to the limitations set forth in §113(d) (*see infra*), the plaintiff shall have the right

> (A) to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right (17 U.S.C. §106A(a)(3)(A)), and
>
> (B) to prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right. (17 U.S.C. §106A(a)(3)(B)).

¶35 of the Complaint alleges that VLS intends "to cover the murals with acoustical panels that will be firmly affixed to the wall structure". Thus, the "intentional" element set forth in (A) and (B) has been pleaded. ¶38 sets forth specific facts supporting Kerson's allegation as to how the threatened distortion, mutilation, modification or destruction of the Murals would be prejudicial to his reputation as a mural artist. Thus, the "prejudicial" requirement of (A) has been pleaded. Finally, ¶¶24 and 37 set forth specific facts supporting Kerson's allegation that the Murals are works of "recognized stature." Thus, this requirement of (B) also has been met.

The limitations set forth in §113(d) refer to works that, as here, have been "incorporated in or made part of a building." 17 U.S.C. §113(d)(1) states, in that event, the rights conferred by paragraphs (2) and (3) of §106A(a), shall not apply if

> (A) a work of visual art has been incorporated in or made part of a building in such a way that removing the work from the building will cause the destruction, distortion, mutilation, or other modification of the work as described in section 106A(a)(3), and
>
> (B) the author consented to the installation of the work in building either before the effective date set forth in section 610(a) of VARA [June 1, 1991], or in a written instrument executed or after such effective date that is signed by the owner of the building and the author and that specifies that installation of the work may be subject

to destruction, distortion, mutilation, or other modification, by reason of its removal.

¶21 of the Complaint alleges specific facts that the "Murals were painted with acrylic paint directly onto the sheet rock walls of Chase Hall." ¶¶32 and 33 of the Complaint allege specific facts that the "Murals were painted directly onto the sheet rock affixed to the building and incorporated into the walls of Chase Hall in such a manner that any effort to remove them would require disfiguring the Murals" causing "significant damage to the Murals and destroy, distort, mutilate or otherwise modify them." ¶40 of the Complaint pleads that the parties did not agree in a written instrument signed by the parties that "installation of the work may subject the work to destruction, mutilation, or other modification, by reason of its removal". Therefore, the limitation of §113(d)(1) does not apply.

Moreover, the limitation of §113(d)(2) does not apply because the Murals cannot be removed from the building without the destruction, distortion, mutilation, or other modification of the work as described in §106A(a)(3). *See,* ¶¶32 and 33 of the Complaint.

In addition to repeatedly pleading that VLS's stated plans are either a distortion, mutilation, or other modification and/or a destruction of the Murals, the Complaint further specifically pleads that covering the Murals is a violation of Kerson's VARA rights as follows:

¶30 "Thereafter, on August 5, 2020, VLS finally acknowledged the existence of VARA and Kerson's rights thereunder and sent him notice that he had 90 days to remove the Murals and, failing that, VLS would remove <u>or cover</u> the Murals." (emphasis supplied)

¶34 "Thereafter, on or about October 8, 2020, Kerson's counsel advised VLS that removing the Murals would destroy them, and that Kerson could not be required to remove the Murals, and that he did not consent to VLS removing <u>or covering</u> the Murals." (emphasis suppled)

¶35 refers to VLS's plan "to <u>cover</u> the murals with acoustical panels that will be firmly affixed to the wall structure." (emphasis supplied)

¶43 alleges that "VLS cannot remove <u>or cover the Murals</u> in contravention of Kerson's rights under VARA." (emphasis supplied)

¶46 alleges that "Kerson is entitled to temporary preliminary and injunctive relief barring VLS for removing, <u>covering</u> or destroying, disfiguring, mutilating or otherwise modifying the

6

Murals." (emphasis supplied)

¶A.4 of Request for Relief, "VLS cannot under VARA remove <u>or cover</u> the Murals." (emphasis suppled).)

¶B.1 Granting and/or awarding Kerson "a temporary. temporary, preliminary and permanent injunction enjoining VLS, its agents, attorneys, and employees, and all those acting in concert with them, from taking any action with regard to the Murals that will remove, <u>cover</u>, destroy, disfigure, mutilate or otherwise modify the Murals." (emphasis supplied)

The foregoing conclusively demonstrates that the Complaint plausibly pleads the essential elements of Kerson's VARA claim. Accordingly, VLS's Motion to Dismiss should be denied.

### III.  VLS's Stated Plan to Permanently Cover the Murals Violates VARA

VLS's primary argument does not allege that the Complaint fails to plead a plausible cause of action. Rather, it is a more fundamental argument, namely, that VLS's stated plan to permanently cover the Murals is not actionable under VARA regardless as to how it is pleaded. In making this argument, VLS is seeking a declaration by this Court that VLS's stated plan to permanently cover the Murals is neither a distortion, mutilation, or other modification, nor a destruction of the Murals. Surely, it is plausible, and even likely, that firmly affixing acoustical panels to the wall structure could involve pasting or gluing the panels directly on the wall surface, thereby destroying, modifying, or distorting the images. Because, at minimum, a determination of this issue requires further factual inquiry including, but not limited to, an expert evaluation of VLS's plans, it is premature to consider its merits at the pleading stage.

Expanding on this dubious proposition, VLS argues that compelling it to continue to display the Murals will raise serious constitutional issues. Although VLS contends that this Court does not have to resolve this constitutional issue, it has been raised.

Although it is Plaintiff's contention that VLS's challenge to the scope of VARA is inappropriate at the pleading stage, Plaintiff disagrees with VLS's conclusions. Initially, it must

be noted that the purpose of the VARA legislation is to protect both the reputations of certain visual artists and the works of art they create. It provides these artists with the rights of "attribution" and "integrity." The former ensures that artists are correctly identified with the works of art they create, and that they are not identified with works created by others. The latter [which is appliable to the current controversy] allows artists to protect their works against modifications and destructions that are prejudicial to their honor or reputations. H.R. Rep. No. 514, 101st Cong., 2d Sess. 7 (1990), *reprinted in 1990* U.S.C.C.A.N. 6915. In his remarks proposing the legislation, Representative Robert W. Kastenmeier, Chairman of the House Judiciary Subcommittee on Courts, Intellectual Property, and the Administration of Justice, described VARA as "a pragmatic response to a real problem. It is directed toward development of Federal rights that would enable visual artists to protect the integrity of their works and the fact of their authorship …visual arts covered by this bill meet a special societal need, their protection and preservation serve an important public interest." *Id*, at 6915-6916. Similarly, Representative Markey, in his introductory statement, recognized that "Artists in this country play a very important role in capturing the essence of culture and recording it for future generations. It is often *through art that we are able to see truths*, both beautiful and ugly." *Id*. at 6916 (emphasis supplied). Congress clearly recognized that visual art not only must be protected and preserved, but also seen. Concealment of art, as proposed by VLS, clearly violates this objective.

      VLS's argument that the rights that VARA provides to artists extend only to destruction or "intentional distortion, or other modification" of a work of visual art, but not to covering up a work, is neither supported by the language of VARA nor by case law. Rather, the proposed intentional cover-up is prejudicial to Kerson's honor or reputation as the original Murals can no longer be viewed. Entombing the Murals in effect destroys the work.

VLS initially argues that covering a work of art and removing it from view is not a destruction provided that it leaves the work intact. Of course, the allegation in the Complaint which relies on VLS's expressed intention includes likely damage to the surface of the mural rather than concealment alone. (*See* Motion to Dismiss, p. 7.) VLS then makes the even more radical argument that "covering a work [cannot] plausibly be said to 'distort,' 'mutilate,' or 'modify' the work where a piece of art is wholly removed from view, there is nothing left that could be said to be modified or distorted such that it prejudices the artist's honor or reputation." VLS's latter assertion conveniently ignores the fact that the permanent covering of the Murals, in and of itself, distorts, mutilates, or otherwise modifies the work.

The fallacy of VLS's argument is demonstrated by VLS's reliance on the so-called "public presentation" exception of VARA, which states that "[t]he modification of a work of visual art which is the result of conservation, or of public presentation, including lighting and placement, of the work is not a destruction, distortion, mutilation, or other modification described in subsection (a)(3) unless modification is caused by gross negligence." 17 U.S.C. §106A(c)(2). While referencing the pertinent legislative history ("[g]enerally, the removal of a work from a specific location comes within the exclusion because the location is a matter of presentation, unless the work cannot be removed without causing the kinds of modifications described in proposed subsection 106A(a)(3)") H.R. Rep. No. 514, 101st Cong., 2d Sess. 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6915, 6927, VLS fails to reference the *raison d'etre* for the subsection, which states "[u]nder subsection (c)(2), galleries and museums continue to have normal discretion to light, frame, and place works of art. However, conduct that goes beyond presentation of a work to physical modification of it is actionable." *Id, emphasis, supplied.* In view of Congress's conclusion that visual art must be seen, permanently covering up and concealing the Murals, in and of itself, is a modification that would be prejudicial to Kerson's

honor or reputation.

VLS cites to two cases, neither of which involved a work of visual art that had been incorporated in or made part of a building. VLS's reliance on *Massachusetts Museum of Contemporary Art Found., Inc. v. Büchel*, 593 F.3d 38 (1st Cir. 2010) is misplaced. In that case, the museum attempted to accommodate the artist by concealing an incomplete work, because he believed that exhibiting the work in that state would be detrimental to his honor and reputation. The artist alleged that the museum's efforts were insufficient as the incomplete work was still visible (the attempt was characterized as "hiding an elephant behind a napkin"). The Court was not prepared to entertain a VARA claim, based on the museum's temporary placement of tarpaulins over the installation, prior to the opening of the exhibition. Here, on the other hand, VLS's stated plans to permanently cover up the Murals is an admitted intentional act that modifies the work. The reasoning of *Mass MoCA* is not applicable to the facts here.

In *Phillips v. Pembroke Real Est., Inc.*, 186 F. Supp. 2d 89 (D. Mass. 2003); *aff'd.*, 459 F.3d 128 (1st Cir. 2006), the District Court held that in view of the public presentation exception, an artist did not have the right to compel the manager of a public park to display his sculptures in a particular manner, *e.g.* the artist could not prevent the removal and relocation of the sculptures. The 7th Circuit, rejected *Phillips*'s conclusion that site-specific art is excluded from VARA and, in doing so, took a much narrower view of the public presentation exception, stating "[t]he exception basically provides a safe harbor for *ordinary changes* in the public presentation of VARA-qualifying artworks; the artist has no cause of action unless through gross negligence the work is modified, distorted, or destroyed in the process of changing its public presentation" (*emphasis supplied*). *Kelley v. Chicago Park District*, 635 F.3d 290, 306 (7th Cir. 2011). Here, VLS's plan to permanently cover the Murals by affixing acoustical panels firmly to the wall structure clearly goes beyond "ordinary changes in the public presentation". Congress' inclusion

of the public presentation exception was an accommodation to museums and galleries rather than a mechanism whereby an owner of a building could nullify an artist's VARA claims by simply covering up the work.

Kerson submits that, at minimum, the Complaint plausibly pleads that VLS's proposal is a distortion, mutilation, or other modification and/or destruction of the Murals, that cannot be dismissed at the pleading stage.

### IV. VLS's Failure to Negotiate a Written Agreement is Relevant to Its Proposition that it has the Unfettered Right to Cover the Murals

One significant fact that requires full development at trial is VLS's failure to avail itself of an opportunity to resolve the issues presented here by negotiating a written agreement, as permitted by 17 U.S.C. §113(d)(1)(B). The Complaint at ¶40 pleads VLS's failure to do so. As noted *supra*, this section applies to works of visual art that have been incorporated into a building, as is the case here. It provides that the author and the building owner, in a signed written agreement, can specify that installation of the work may subject the work to destruction, distortion, mutilation, or other modification, by reason of its removal, and as a result the rights granted pursuant to paragraphs (2) and (3) of § 106A(a) shall not apply. The purpose of this provision is to ensure that the author is made fully aware of the circumstances surrounding the installation and potential removal of the work and has nevertheless knowingly subjected the work to possible modifications that would otherwise be actionable under § 106A. H.R. Rep. No. 514, 101st Cong., 2d Sess. 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6915, 6930. As noted in the House Report, §113(d) "sets forth a general rule that authors of works of visual art incorporated into buildings are protected under section 106A. . . . Whether the rights set forth in paragraphs (2) and (3) of section 106A(a) apply is controlled not by who owns the building at any given time, but by the fact of installation of a work in a building and the circumstances surrounding that installation." *Id.*

VLS could have negotiated and executed a written agreement with Kerson back in 1993 or thereafter specifying the terms governing the installation and maintenance of the Murals including, but not limited to, VLS's stated plan of action to permanently cover the Murals. Despite the fact that VLS should have been aware of the provisions of VARA, VLS failed to avail itself of this opportunity and now is asking this Court to permit it an end-run around the rights that VARA grants to Plaintiff. At a minimum, the relevance of VLS's failure to clarify the parties' respective rights is a factual issue that requires further exploration at trial.

## V. VLS's Constitutional Challenge to VARA Must Be Resolved at Trial

VLS has raised the issue that application of VARA to the murals will unconstitutionally infringe on its first amendment rights. Although it asserts that the Court "…should not resolve this *potential* (emphasis added) constitutional issue" (VLS Opposition, at p.9), some comment as to this potential claim is warranted.

First, essentially, VLS wants this Court to declare that the statute's protection of the artistic work and Kerson's integrity and honor must be rejected because VLS has a First Amendment right to change its mind, and that VARA is impermissibly requiring VLS to engage in compelled speech. Yet VLS can find no court opinion in support of such an extreme position. Its sole cite is to *dicta* in *Phillips* which, in fact, does not support VLS's contention, and which involved a state statute, not a federal one. The difference, of course, is significant. As the district court in *Carter v. Helmsley-Spear, Inc.* 861 F. Supp. 303 (S.D.N.Y. 1994), *rev'd. on other grounds*, 71 F.3d 77 (2nd Cir. 1995) noted in considering whether VARA infringed on a property owner's Fifth Amendment rights, a contention comparable to VLS's First Amendment claim, defendants making such a constitutional claim face a heavy burden since there is a presumption that Congress passed statutes are constitutional, citing *FEC v. Political Contribution Data, Inc.*, 943 F.2nd 190, 191 (2nd Cir. 1991). Clearly, at this stage of the

proceeding and on the record before this court, there is no basis for this court to entertain VLS's potential constitutional argument.

Second, it must be noted that VLS's purported compelled speech claim must fail for other reasons as well. VLS was certainly not compelled to have its walls painted with a mural that was viewed as a testament to Vermont's participation in the underground railroad helping to free the slaves. It invited Kerson to paint the murals and as the record indicates, proudly celebrated their completion. At the time it agreed with Kerson to undertake the painting of the murals, VARA was in existence, and considering VLS's status as a law school, VLS presumably should have been aware of its terms. As discussed *supra*, VARA gave VLS the opportunity to have Kerson execute a waiver of his rights under §113(d) of the statute and permit VLS to do as it pleased with the murals notwithstanding VARA's protections. It failed to do so, and VLS cannot look now to the First Amendment to rectify its lack of diligence. Interestingly, the district courts in *Carter* and *Phillips*, in discussing the constitutional arguments, noted that the property owners' failures to obtain a waiver under the statute so they could remove, destroy, or modify the art, undermined their belated constitutional claims. VLS should fare no better.

## VI.  Conclusion

The Complaint plausibly pleads all of the required elements to support Kerson's VARA claim. All of these pleadings must be accepted as true for purposes of the Motion to Dismiss. VLS's argument that its intentional plan to permanently cover the Murals is not actionable under VARA is neither supported by the text or legislative history of VARA, nor by case law. Moreover, whether and how VLS's plan to affix panels to the wall surface both to permanently cover and conceal the Murals violates Kerson's VARA rights requires a factual inquiry, thereby foreclosing dismissal of the Complaint. VLS's failure to avail itself of an opportunity to resolve the matter by written agreement is relevant to its claim that it has the unfettered right to

permanently cover the Murals. Finally, the potential constitutional challenge to VARA can only be resolved at trial and not at the pleading stage.

Accordingly, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss the Complaint.

THE PLAINTIFF,

SAMUEL KERSON

By: /s/ Steven J. Hyman
Steven J. Hyman (2097)
McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York 10016
Telephone (212) 448-1100
Facsimile (212) 448-0066
shyman@mclaughlinstern.com
*Attorneys for Plaintiff*

By: /s/ Richard I. Rubin
Richard I. Rubin (7012)
RUBIN, KIDNEY, MYER & VINCENT
237 North Main Street, Suite 3
Barre, Vermont 05641
Telephone (802) 479-2514
Facsimile (802) 479-2516
rrubin@rkmvlaw.com
*Attorneys for Plaintiff*

Dated: March 3, 2021