UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| SAMUEL KERSON, | ) |
| *Plaintiff,* | ) ) ) ) |
| v. | ) CIVIL ACTION NO. 5:20-cv-00202-gwc |
| VERMONT LAW SCHOOL, INC., | ) ) ) |
| *Defendant.* | ) ) ) |

### PLAINTIFF SAMUEL KERSON'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO VERMONT LAW SCHOOL, INC.'S MOTION FOR SUMMARY JUDGMENT

The Court converted Vermont Law School's (VLS) Motion to Dismiss into a Motion for Summary Judgment. On April 14, 2021, Plaintiff Samuel Kerson asked for additional time to do discovery, find an expert, and respond.[1]

Kerson's April 14th response (Document #26) was a more thorough analysis of the question of "modification" as well as a request for more time. The Court granted Kerson additional time, and he retained Emily Phillips, a well-established art conservator; deposed Jeffrey Knudson, the VLS buildings manager; and filed a response on July 1, 2021 (Document #31).

VLS recently deposed Emily Phillips. A condensed transcript of her deposition is attached as Exhibit 1. Counsel for VLS explored Ms. Phillips' experience, and challenged the bases for the opinion in her Declaration.

There was questioning at the end of the deposition at which both parties asked Ms. Phillips

---

[1] The Complaint requesting injunctive relief was filed to prevent damage to the murals after VLS said it planned to permanently affix (glue) acoustic panels to the surface of the paintings. After the litigation began, VLS changed its plan and proposed to build a wall with the panels which would hang an inch or two from the surface.

The conversation then changed, and the issue became whether the proposed wall entombing the murals is a modification. The Court said it is not. The question of whether the wall would result in damage to the murals was not really addressed.

1

what she believed would be the effect on the surface of the mural if it were to be enclosed in the wall proposed by VLS:

> MR. RUBIN: Okay. So looking at all of these factors holistically, do you have an opinion whether it's more likely than not that damage will occur to the surface of the mural if it is constructed as proposed by Vermont Law School?
>
> A:   Yes, I think I have stated that in my Declaration, yes.
>
> Q.   The answer is you'd have an opinion; and what is your opinion? I'm not asking in terms of percentage; I'm asking whether it's more likely than not in your opinion that damage will occur?
>
> A.   I think when you lay out the entire system, I am -- there is concern that there is the potential risk for damage, yes.
>
> Q.   Is it more likely than not that it will occur?
>
> A.   Oh, I would say, I would say more likely, just given -- yes; yes.

Phillips Deposition (PD) at p. 71

> MR. BARNARD: You testified that in your view it is more likely than not that some damage will occur to the mural with the wall as constructed; correct?
>
> A.   I believe I've answered that, yes, in multiple ways; correct, yes.
>
> Q.   But you're unable to give a particular percentage; correct?
>
> A.   Correct.
>
> Q.   You can't say when that damage might occur; correct?
>
> A.   Correct.
>
> Q.   You can't say how extensive that damage will be; correct?
>
> A.   Correct.
>
> Q.   You can't say what specific type of damage will occur; correct?

2

> A.   I, I, I have provided examples of what typical damage would look like under these type of circumstances; but I will not -- you know, and that's the only thing I can base that on.
>
> Q.   And yet given all the many unknowns here, you feel comfortable as a professional saying not just that there is risk or concern, but that it is more likely than not that there will be some sort of damage to the mural?
>
> A.   Yes.

PD at p. 73.

Ms. Phillips was asked whether she was offering an opinion that it is more likely than not that the use of these unknown materials will in fact cause harm to the mural. Her response was:

> A.   . . . and I would say it's more likely than not that this acoustic panel, in the creation of this entire system, with a very limited air space and with the painting being on an exterior wall, is cause for concern, and I can't see how damage wouldn't occur over time.

PD at pp. 45-46.

Ms. Phillips was then asked what potential damage could occur. She said:

> A.   I think . . . what the main possibilities are; and that's mold or . . . fungal growth due to high levels of moisture and humidity, temperature. You're talking about delamination of the paint; you're talking about possible shifting of pigments, colors . . . there's certain pigments that . . . respond differently to different types of conditions. I think that could change color or surface quality over time.

PD at p. 47.

Summary judgment is generally disfavored. Our civil rules and custom encourage the full development of facts and their presentation to a fact finder for consideration at trial. It is not the practice of the federal courts to decide complex issues with disputed facts on the basis of declarations or deposition testimony.

Only when there is no genuine dispute regarding a material fact will the Court deny a party its opportunity to present its case. VLS has the burden of proving that there is no dispute.

3

The issue here is whether there is a genuine dispute regarding the effect the construction of the wall will have on the surface of the murals.

The Court has already concluded that the murals are works of "recognized stature" that qualify for protection under VARA, and that their damage or even concealment will negatively impact Kerson's reputation as an artist.

Emily Phillips says that the wall as planned will more likely than not damage the murals. VLS says either that it will not (without evidence) or that whatever damage may occur is speculative because Ms. Phillips was unable to say how much damage would occur or when it will occur.

An analogy may be helpful. If a child goes to the beach without sunscreen, it is likely that she will suffer sunburn and pain. Must we know how much sunburn, where on her body, or how long her exposure must be to know the child will be injured? We apply lotion to prevent a likely injury without knowing all the details.

An engineer looks at concrete columns in a parking garage supporting a building in Florida. He sees several areas of concern; age, degradation, and lack of maintenance, all problems which have led to collapse in similar buildings. He reports that it is likely a column or columns will fail. The city says the owner must take action. The owner says the engineer has not said when, how, how many columns, or what the extent of the damage may be. Can the city not act to prevent the harm?

The Court has said that VARA establishes the right of an artist "to **prevent** any deforming or mutilation changes to his work." *Order on Motion for Preliminary Injunction*, page 5. The Court quotes the statute that gives the artist the right to take legal action "to **prevent** any intentional distortion, mutilation or other modification of that work. . . ."

The Plaintiff seeks an injunction to prevent damage to the surface of the mural. The extent

4

of the damage may be unknown today, but his expert has said that it will be likely to occur. Also, the probable damage will surely "modify the murals" even if the wall itself may not. The construction of this wall, which is likely to cause damage, modification, or even total destruction with *a priori* knowledge of its likelihood, is an intentional act.

    VARA is a grant of important and substantial civil rights to artists to protect their art which the community (including VLS) has recognized and values. The law should be interpreted liberally in favor of the rights bestowed. In this case, the rights granted by VARA create reasonable limitations on VLS' property rights. VLS was not required to permit Kerson to paint on its walls, and the statute gave the Law School the right to obtain a waiver, which it chose not to do.

**PLAINTIFF,**
**SAMUEL KERSON**

By: /s/ Steven J. Hyman
Steven J. Hyman (2097)
McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York 10016
Telephone (212) 448-1100
Facsimile (212) 448-0066
shyman@mclaughlinstern.com
*Attorneys for Plaintiff*

By: /s/ Richard I. Rubin
Richard I. Rubin (7012)
RUBIN, KIDNEY, MYER & VINCENT
237 North Main Street, Suite 3
Barre, Vermont 05641
Telephone: (802) 479-2514
Facsimile: (802) 479-2516
rrubin@rkmvlaw.com
*Attorneys for Plaintiff*

By: /s/ Oliver R. Chernin
Oliver R. Chernin (4516)
McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York 10016
Telephone (212) 448-1100
Facsimile (212) 448-0066
ochernin@mclaughlinstern.com
*Attorneys for Plaintiff*

Dated: August 12, 2021