IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| SAMUEL KERSON, <br> Plaintiff, <br><br> v. <br><br> VERMONT LAW SCHOOL, INC., <br> Defendant. | ) <br> ) <br> ) <br> )    No. 5:20-cv-00202-gwc <br> ) <br> ) <br> ) <br> ) |

### VERMONT LAW SCHOOL'S SUPPLEMENTAL
### REPLY IN SUPPORT OF SUMMARY JUDGMENT

Lest there be any question, Samuel Kerson's July 1, 2021 Supplemental Memorandum (Doc. 31)[1] again makes clear what this litigation is about: "the point" is that he believes "covering the Mural[], in and of itself, damages [his] reputation." Supp. Memo. at 3. That may or may not be so. However, whatever Kerson may feel about the reputational effects of covering his work, covering the Mural does not "in and of itself" violate the Visual Artist Rights Act ("VARA"). *See* Order of March 10, 2021 (Doc. 20) at 9-11. Rather, the Law School's decision to remove the work from display would run afoul of VARA only if it were accomplished in a manner that destroyed or intentionally distorted, mutilated, or modified the work.

Kerson has failed to establish a genuine issue of material fact on that dispositive question. There is no evidence that the installation of the cover will itself cause any harm to the work: as explained in prior filings, the frame will be

---

[1] Kerson has now filed two supplemental memoranda—the second of which, filed on August 12, 2021, was not authorized by the Court's prior orders—bringing the total number of memoranda filed in opposition to summary judgment to three (or, if one counts his opposition to the initial motion to dismiss, four). *See* Doc. Nos. 19, 26, 31, and 39. Despite this quantity of briefing, he has failed to identify any authority authorizing a claim under VARA in the circumstances at issue here (indeed, his most recent memorandum cites no authority whatsoever).

constructed so that it does not contact the Mural at any point and leaves approximately two inches of space between the panels and the face of the Mural. Instead, Kerson focuses on the potential for adverse impact to the Mural over time due to unknown conditions behind the cover. To that end, he has offered the opinion of an art conservator that the cover proposed by VLS does not comport with best practices in the field of art conservation, with the result that there is risk of deterioration to the Mural over time. This is a bridge too far. Under any plausible reading of the law, VARA does not require the private owner of a work of art to adhere to particular art conservation standards to prevent the deterioration of a work of art. VARA simply imposes limited proscriptions on acts of destruction or intentional distortion—proscriptions which are not in any way implicated in the present case. As Kerson has failed to make out a colorable claim under VARA, VLS is entitled to summary judgment.

      A.      **It Is Undisputed that the Proposed Cover Will Not Result in Immediate Harm to or Modification of the Mural.**

In earlier briefing, Kerson expressed some concern that the installation of the cover itself might injure the Mural. *See, e.g.*, Opposition to Motion to Dismiss (Doc. 19) at 7 (suggesting that "it is plausible, and even likely, that firmly affixing acoustical panels to the wall structure could involve pasting or gluing the panels directly on the wall surface, thereby destroying, modifying, or distorting the images"). However, months later and after an opportunity for discovery, Kerson has failed to create any genuine dispute as to whether installation of the cover will in

fact cause the immediate destruction or modification of the work—for there is no evidence that it will.

VLS employee Jeffrey Knudsen testified that the objective in planning the cover was to come up with a design that would not harm the mural as the cover was being installed. *See* May 10, 2021 Deposition of Jeffrey Knudsen ("Knudsen Depo. Tr.") at 54:14-24 (Doc 31-1 at 15). The ultimate design achieves this intent: as detailed in prior filings, the cover will be attached only to the wall, and the frame will be constructed so as to leave approximately two inches of space between the acoustic panels and the surface of the Mural. *See* February 12, 2021 Declaration of Jeffrey Knudsen (Doc. 13-1) and Exh. C (Doc. 13-2).

There is no evidence to the contrary. In opposing summary judgment, Kerson relies on the opinion of Emily Phillips, an art conservator, that the proposed wall would not "be consistent with best practices in the art conservation field" and for that reason poses a risk of leading to deterioration of the Mural over time. June 28, 2021 Declaration of Emily Phillips ("Phillips Decl.") (Doc.31-2) at ¶¶ 8, 16; Exh. A, Transcript of the July 29, 2021 Deposition of Emily Phillips ("Phillips Depo. Tr.") at 30:5-9. Specifically, Phillips identified the following concerns:

- **Use of Acoustic Tiles:** Phillips notes that the acoustic tiles to be used in the cover are a "completely unknown material," that they may contain substances that "may adversely impact . . . the murals," and that they may or may not be permeable and allow for proper air flow. Phillips Decl. at ¶ 10. Phillips acknowledged at deposition that she did not, in fact, know whether any materials would off-gas, what gases would be produced if so, how the gases would impact the Mural, and how permeable the panels were to airflow. *See* Phillips Depo. Tr. at 33:9-16, 35:5-11, 48:2-12, 72:18-73:10.

3

- **Space Between Cover and Mural:** Phillips also raises concern with the space created between the cover and the Mural, suggesting that it might subject the Mural to "wide temperature variances" and "high humidity" over time leading to water condensation and biological growth or mold.  Phillips Decl. at ¶ 12.  She attributes this in part to the fact that the Mural is painted on an exterior wall, which can increase the risk of moisture infiltration.  Phillips Depo. Tr. at 50:25-51:12.  Phillips testified that the risk of moisture infiltration will depend on construction of the building and the permeability of the cover, and she acknowledged that she had no information on how the exterior walls of Chase Hall were constructed or the permeability of the acoustic panels, making it difficult to predict what changes may in fact take place in the space underneath the cover.  Phillips Depo. Tr. at 48:7-12, 51:13-52:25.

- **Inability to Visually inspect the Mural:** Finally, Phillips expresses concern that, in blocking the Mural from view, the cover will prevent visual monitoring of any changes in or deterioration of the Mural.  Phillips Decl. at ¶ 14.  Phillips acknowledges, however, that the temperature and humidity meters that VLS has proposed installing behind the cover would provide useful information on the risk of damage due to temperature fluctuations and moisture infiltration.  Phillips Depo. Tr. at 66:19-67:5.

While Phillips offers opinions on how the foregoing factors may impact the risk of deterioration over time, she has expressly declined to offer an opinion on whether the installation of the cover would cause immediate harm to the Mural.  *See* Phillips Depo. Tr. at 28:2-30:4.  Accordingly, the only live question before the Court on summary judgment is whether the risk of deterioration over time posed by installing the proposed cover represents a violation of VARA.

    **B.    The Risk of Deterioration over Time Does Not Present an Actionable Violation of VARA.**

Lacking any claim of immediate harm to his work, Kerson seeks to establish that exposing a work of visual art to a risk of deterioration due to inadequate conservation measures constitutes a violation of VARA.  In so doing, he asks the

4

Court to interpret VARA in a manner that no federal court has previously endorsed—and which is contrary to the statute's text and legislative history. The Court should reject Kerson's unfounded interpretation.

Kerson's theory of harm fails to present a viable claim for several reasons. First, recognizing a claim to prevent deterioration of a work over time due to allegedly inadequate conservation measures would contravene one of the statute's express exemptions: VARA does not authorize suit to address modifications resulting from "the passage of time or the inherent nature of the materials." 17 U.S.C. § 106A(c)(1). Notably, "[t]his is true even if the modification is caused by gross negligence." *Flack v. Friends of Queen Catherine Inc.*, 139 F. Supp. 2d 526, 534 (S.D.N.Y. 2001). The original draft of the exemption provided that modifications due to the passage of time were not actionable "<u>unless the modification was the result of gross negligence in maintaining or protecting the work.</u>" H.R. Rep. No. 514, 101st Cong., 2d Sess. (1990), *reprinted in* 1990 U.S.C.C.A.N. 6915, 6915 (emphasis added). As enacted, the exemption omitted that qualifier, *see* 17 U.S.C. § 106a(c)(1), and thus exempts changes due to the passage of time *regardless* of the level of care exercised in maintaining and protecting the work.

In *Flack*, for example, the plaintiff artist claimed that defendants had violated VARA by placing her clay sculpture outdoors and exposing it to the elements, which allegedly caused deterioration. *See* 139 F. Supp. 2d. at 534. The court, citing § 106A(c)(1), disagreed that these allegations made out a violation of

5

VARA and dismissed her claim. *Id.* Here, Kerson makes much the same contention—i.e., that his work risks being damaged by improper conservation and exposing it to unknown and possibly harmful environmental conditions—with the only difference being that he asserts it prospectively, before any deterioration has occurred. For the same reasons as in *Flack*, Kerson's claim is not authorized by the statute and must be dismissed.

Second, even absent the exemption, the risk of deterioration over time due to the installation of a cover over the Mural simply does not fall within the scope of VARA's prohibitions. Again, VARA creates a cause of action to address (1) "intentional distortion, mutilation, or other modification of [a] work which would be prejudicial to [the artist's] honor or reputation and (2) "intentional or grossly negligent destruction" of a work.[2] 17 U.S.C. § 106A(a)(3). Neither provision applies here.

To start with, they both require an intentional—or, in the case of destruction, grossly negligent—act of modification or destruction. This limitation to intentional or grossly negligent conduct was a change from the original text of the bill, which would have applied to "any destruction, distortion, mutilation, or other modification . . . which is the result of an intentional or <u>negligent act or omission</u> with respect to that work." H.R. Rep. No. 514, 101st Cong., 2d Sess. (1990), *reprinted in* 1990

---

[2] As noted in prior briefing, a cause of action for destruction is only available for works of "recognized stature." At this stage, VLS does not specifically address whether the Mural so qualifies but reserves its rights to challenge the Mural's qualification as a work of "recognized stature" in future motions or at trial should this case proceed.

U.S.C.C.A.N. 6915, 6915 (emphasis added).  Under the statute as enacted, negligence is not sufficient to make out a violation of VARA.

VLS's actions in erecting a cover, even if arguably not rising to the level of best practices in the field of art conservation, cannot be said to amount to an intentional or grossly negligent act of destruction or modification.  It is undisputed that VLS's intention in designing a cover was to avoid damaging the Mural. Knudsen Depo. Tr. at 54:14-24 (Doc 31-1 at 15).  VLS's concern in doing so was to remove the artwork from view in a way that satisfied its obligations under VARA, but also in part to protect the controversial work from vandalism—a legitimate concern given attacks on divisive works of public art over recent years.[3]  *See* March 22, 2021 Declaration of Jeffrey Knudsen (Doc. 23-1), ¶ 3.  Nor is the idea of installing a wall to conceal and protect the artwork particularly unusual: to cite one example, when the University of Vermont was renovating Perkins Hall in the early 1990s, it concealed a WPA-era mural behind a false wall to avoid the expense of moving it; the mural was recently discovered and successfully relocated during a subsequent set of renovations.[4]  When Kerson raised concerns about potential

---

[3] *See, e.g.*, Aidan Quigley, *Controversial Burlington Mural Vandalized Again*, VTDigger (Nov. 2, 2018), available at https://vtdigger.org/2018/11/02/controversial-burlington-mural-vandalized/ (last accessed March 23, 2021); Sawyer Loftus & Elizabeth Hewitt, *Police Investigate Vandalism of Black Lives Matter Mural*, VTDigger (June 14, 2020), available at https://vtdigger.org/2020/06/14/police-investigate-vandalism-of-black-lives-matter-mural/ (last accessed Mar. 23, 2021).

[4] *See* Cat Viglienzoni, *Hidden WPA-era mural uncovered behind wall at UVM*, WCAX (June 3, 2019), available at https://www.wcax.com/content/news/Hidden-WPA-era-mural-uncovered-behind-wall-at-UVM-510771981.html (last accessed Aug. 11, 2021).  Another local example involves the so-called Lost Mural of Chai Adam, a unique mural painted in the early 1900s at a Burlington synagogue.  In the 1980s, when the synagogue was being converted to apartments, a wall was installed (in consultation with local art conservator Rick Kerschner) in an effort to preserve the mural, where it stayed until being recovered and relocated to the Ohavi Zedek synagogue in recent years.  *See* Sam Heller, *Long-hidden mural revealed at Burlington synagogue*, VTDigger (Aug. 3, 2015), available at

humidity and temperature variations behind VLS's proposed cover, VLS offered to install humidity and temperature monitors behind the cover to address those concerns. *Id.*, ¶ 4. Kerson may dispute whether VLS's course of conduct has been adequately protective, but the undisputed facts here cannot support a finding of intention to destroy or modify his work, nor the type of "reckless conduct that borders on intentional wrongdoing" sufficient to make out gross negligence. *Matter of Rockaway Jet Ski, LLC*, No. 14-CV-1979 (JMA), 2016 WL 8861617, at *11–12 (E.D.N.Y. Dec. 19, 2016) (finding undisputed facts failed to show gross negligence and granting summary judgment for defendant).[5]

In addition, the undisputed facts do not establish a harm remediable by the relevant provisions of VARA. Section 106A(a)(3)(A) prohibits only a distortion, mutilation, or modification of a work of art "which would be prejudicial to [the artist's] honor or reputation." Here, any changes that might occur over time due to environmental conditions would not reflect on Kerson's "honor or reputation" in a prejudicial manner—nor could they, as nobody will see the work once the cover has been installed. And, while § 106A(a)(3)(B) (prohibiting destruction of a work) is not limited to acts that bear on an artist's honor or reputation, there is no evidence that any deterioration that might occur to the Mural over time would rise to the level of "destroying" the work. Kerson's art conservation witness has provided an opinion

---

https://vtdigger.org/2015/08/03/long-hidden-mural-revealed-at-burlington-synagogue/ (last accessed Aug. 11, 2021).

[5] *See also Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998) (gross negligence requires "conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing"); *Crogan v. Pine Bluff Estates*, 2021 VT 42, ¶ 29 (noting, in affirming summary judgment for defendant, that gross negligence requires "the failure to exercise even a slight degree of care, owed to another" and "plaintiff must show a defendant heedlessly and palpably violated a legal duty owed to plaintiff").

that there is a risk of damage to the work, but she was unable to say when any such damage might occur and how extensive it would be. *See* Exh. A, Phillips Depo. Tr. at 73:2-24. Even accepting Phillips' almost entirely speculative testimony that there is a risk of damage, the mere fact that a work of art may be damaged does not create a cause of action for destruction under VARA. *See Flack*, 139 F. Supp. 2d at 534 (damage to sculpture that did not destroy it could not make out claim for destruction under VARA); *Tobin v. The Rector*, No. 17 CIV. 2622 (LGS), 2017 WL 5466705, at *6 (S.D.N.Y. Nov. 14, 2017) (same), *aff'd* 735 Fed. Appx. 32 (2d Cir. 2018).

For all of these reasons, the risk of deterioration to the Mural over time due to allegedly insufficient conservation measures cannot make out a colorable claim under VARA. The Court should grant summary judgment on that basis.

## Conclusion

A private institution has the right to choose what speech and expression it endorses, including what artwork it displays on its walls. Kerson's attempt to prevent VLS from exercising that right—first by insisting that VARA prohibits covering his work, and now by challenging the means by which VLS intends to cover the Mural—finds no basis in the law. Accordingly, VLS respectfully requests that the Court grant its motion and enter judgment in its favor.

Dated at Burlington, Vermont this 18th day of August 2021.

By  */s/ Justin B. Barnard*
Karen McAndrew, Esq.
Justin B. Barnard, Esq.
DINSE
209 Battery Street
Burlington, VT  05401
802-864-5751
kmcandrew@dinse.com
jbarnard@dinse.com

*Counsel for Vermont Law School, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2021, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system. The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

Richard Rubin, Esq.
rrubin@rkmvlaw.com

Steven J. Hyman, Esq.
shyman@mclaughlinstern.com

Dated:  August 18, 2021                             /s/ *Justin B. Barnard*
                                                                     Justin B. Barnard, Esq.